UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

BRUCE PARKS,                          )
                                      )
            Petitioner,               )
                                      )
v.                                    )          No. 1:16-CV-00149-JRG-CHS
                                      )
JONATHAN LEBO,                        )
                                      )
            Respondent.               )

## MEMORANDUM OPINION

Now before the Court is a pro se prisoner's petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 [Doc. 2] and three supplements thereto [Docs. 5, 12, and 14].  Respondent filed

a response in opposition thereto [Docs. 9 and 23], as well as copies of the state record [Doc. 8].

Petitioner filed a reply to Respondent's initial response [Doc. 10].  After reviewing the relevant

filings, including the state court records, the Court finds that the record establishes that Petitioner

is not entitled to relief under § 2254.  Accordingly, no evidentiary hearing is warranted, *see* Rules

Governing § 2254 Cases, Rule 8(a) and *Schirro v. Landrigan*, 550 U.S. 465, 474 (2007),

Petitioner's requests for § 2254 relief will be **DENIED**, and this action will be **DISMISSED**.

### I.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28

U.S.C. § 2254, *et. seq*., a district court may not grant habeas corpus relief for a claim that a state

court adjudicated on the merits unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

The § 2254(d) standard is a hard standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)).

## II.     BACKGROUND

On January 31, 2012, a Bradley County, Tennessee jury found Petitioner guilty of aggravated rape and aggravated burglary [Doc. 8-1 at 21–11]. These convictions arose from an incident on October 22, 2010, in which a masked intruder, whom the victim recognized as Petitioner based on his voice, entered the victim's apartment, moved her Sony Playstation, beat her, and digitally penetrated her twice. *State v. Parks*, No. E2012-02621-CCA-R3-CD, 2013 WL 5314600, at *1–4 (Tenn. Crim. App. Sept. 7, 2012). In his appeal, Petitioner raised claims that the evidence was insufficient to support the convictions, that the trial court erred in not granting a mistrial based upon a prosecutor's question regarding whether anyone provided an alibi for Petitioner, and that his sentence was excessive [Doc. 8-9]. The Tennessee Court of Criminal Appeals ("TCCA") affirmed the convictions. *Id.* at *10.

Petitioner next filed a pro se petition for post-conviction relief, and counsel subsequently filed an amended petition which incorporated Petitioner's pro se petition [Doc. 8-5 at 3–20, 23–26]. After an evidentiary hearing, the post-conviction court denied relief [*Id.* at 60–67].

Petitioner appealed the denial of his petition for post-conviction relief, requesting review of his claims that counsel was ineffective in (1) not spending more time with Petitioner prior to

trial; (2) failing to request a mental health evaluation of Petitioner; (3) failing to interview the alibi witness; (4) failing to interview Petitioner's mother; (5) failing to make objections during the trial; (6) not rigorously cross-examining the victim; and (7) failing to inspect the physical evidence, all of which Petitioner alleged had prejudiced him [Doc. 8-12 at 19–31]. The TCCA affirmed the post-conviction court's denial of relief. *Parks v. State*, No. E2014-02359-CCA-R3-PC, 2015 WL 9013165 (Tenn. Crim. App. Dec. 15, 2015), *perm. app. denied* May 5, 2016 (Tenn.).

In his petition, the supplements thereto, and reply, Petitioner sets forth the following claims for relief under § 2254:

(1) Counsel was ineffective as to a number of issues;

(2) His sentence was improper;

(3) The trial court should have declared a mistrial based on an improper question from the prosecutor;

(4) The evidence was insufficient to sustain the verdicts; and

(5) The prosecutor made improper comments.

[Doc. 2; Doc. 5; Doc. 10; Doc. 12; Doc. 14]. In his responses [Docs. 9 and 23], Respondent asserts that Plaintiff procedurally defaulted a number of these claims and that the remainder lack merit.

## III.    ANALYSIS

### A.  Procedurally Defaulted Claims

As set forth above, Petitioner sets forth a number of claims for relief under § 2254. Petitioner, however, did not raise all of these claims in his underlying state court appeals regarding his conviction and/or the denial of his petition for post-conviction relief. Before a district court may grant habeas relief to a state prisoner, the prisoner must exhaust all of his available remedies in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all

levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365–66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. A petitioner who fails to raise his federal claim in the state courts and cannot do so now due to a procedural rule has committed a procedural default that forecloses federal habeas review unless the petitioner shows cause to excuse his failure to comply with the procedural rule and actual prejudice from the constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

As the record establishes that Petitioner did not raise a number of the claims for which he now seeks relief under § 2254 in his state court appeals and Petitioner has not shown cause to excuse his procedural default of those claims, the Court will only address the claims that Petitioner properly raised in all levels of the state appellate review process and raises in his § 2254 filings,[1] including as follows:

    (1)    The evidence was insufficient to support Petitioner's conviction;

    (2)    The trial court improperly sentenced Petitioner;

    (3)    Trial counsel was ineffective for failing to request a mental evaluation of Petitioner;

    (4)    Trial counsel was ineffective for failing to interview an alibi witness;

    (5)    Trial counsel was ineffective for failing to file a motion to suppress the DNA evidence;

---

[1] While Petitioner raised a claim related to mistrial in his direct appeal of his convictions, the TCCA found that Petitioner had waived that argument by not raising it in a motion for new trial. *State v. Parks*, No. E2012-02621-CCA-R3-CD, 2013 WL 5314600, at *6 (Tenn. Crim. App. Sept. 7, 2012). As such, Plaintiff procedurally defaulted this claim. *Coleman v. Thompson*, 501 U.S. 722, 731–32, 725 n.1 (1991).

(6)    Trial counsel was ineffective for failing to request a mistrial and/or object to the prosecutor's questioning of a witness regarding whether anyone had provided the detective with an alibi for Petitioner;

(7)    Trial counsel was ineffective for failing to rigorously cross-examine the victim at trial; and

(8)    Trial counsel was ineffective for failing to inspect the physical evidence.

[Docs. 8-9 and 8-12]. All other claims will be **DISMISSED** as procedurally defaulted.

### B. Sufficiency of the Evidence

The Court will first address the merits of Petitioner's claim that the evidence was insufficient to support his convictions. The United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the controlling rule for such claims. *See Gall v. Parker*, 231 F.3d 265, 287–88 (6th Cir. 2000), *superseded on other grounds Parker v. Matthews*, 567 U.S. 37 (2012). In *Jackson*, the Supreme Court held that the evidence is sufficient to sustain a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. In making this determination, the district court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

A habeas court reviewing a challenge to the sufficiency of the evidence must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). First, under *Jackson*, the court gives deference to the fact finder's verdict "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n.16); *see also Cavazos v. Smith*, 565 U.S. 1, 6–7 (2011) (providing that "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that

the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution'") (quoting *Jackson*, 443 U.S. at 326). The habeas court must also give additional deference to the state court's consideration of the trier-of-fact's verdict pursuant to the highly deferential standards of the AEDPA. *Cavazos*, 565 U.S. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review"). As such, a petitioner bringing a claim of insufficient evidence "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

The substantive evidence of Petitioner's guilt at trial came from two main sources. First, the victim testified that she recognized Petitioner as her attacker based on his voice. Second, an expert witness testified about her testing of three DNA samples, one from Petitioner and two from evidentiary items, and concluded that she could not exclude Petitioner as a contributing source to the evidentiary DNA samples taken from items at the crime scene. The Court will address the DNA evidence before addressing the victim's testimony.

### 1. DNA Evidence

First, the record establishes that the DNA evidence against Petitioner was very weak. Specifically, the only DNA evidence that the prosecution introduced at trial came in through an expert witness from the Tennessee Bureau of Investigation [Doc. 8-3 at 83–91]. In her testimony, the DNA expert witness generally (and briefly) defined DNA before identifying a number of DNA "short tandem repeats" that she had identified in both Petitioner's DNA sample and the DNA samples that police had obtained from the gun and sock that the victim's assailant had left at the crime scene [Doc. 8-2 at 46–57; Doc 8-3 at 85–91]. The expert witness testified that she could not definitively state that Petitioner was a contributor to the gun and sock DNA samples, but could not exclude him [*Id.* at 86–91]. The expert witness further acknowledged that if the prosecution had

submitted the victim's DNA, she may have been able to exclude Petitioner as a contributor to the gun and sock DNA samples [*Id.* at 92].

Moreover, on cross-examination, the expert witness acknowledged that (1) the DNA samples from the gun and the sock contained DNA from at least four (and possibly more) individuals; (2) the more contributors a sample has, the more DNA markers there will be; (3) if she had tested a DNA sample from one of her lab colleagues against the gun and sock DNA samples, it was "most likely" that some of the colleague's characteristics would appear in the samples; and (4) "the characteristics that [she] found could be shared by many different people" [*Id.* at 93–96]. She also again confirmed that she could not make a positive identification of Petitioner as a contributor to the gun and sock DNA samples [*Id.* at 95–96].

The prosecution did not present any evidence to establish the probability that Petitioner was a contributor to the evidentiary DNA samples based on the shared DNA markers [*Id.* at 83–97].

## 2. Voice Identification

The victim testified that on October 22, the night of the attack, she had plans to celebrate her birthday with her best friend, but felt sick and decided to lay down instead [*Id.* at 58–59]. The victim fell asleep, but later awoke, heard a sound, realized that someone was in her house, called out, and turned a light on [*Id.* at 59]. The victim then heard someone run up the stairs and saw a man with a mask on his face that covered everything but the bridge of his nose and eyes, dirty socks on his hands, and what appeared to be a gun pointed at her [*Id.* at 60, 72–73]. The masked figure said "Shut up, b*tch, or I will kill you," at which point the victim recognized the voice of her attacker as Petitioner's voice [*Id.* at 60–61].

The attacker then punched the victim, flipped her over onto her stomach, and put his finger inside of her, at which point she began to scream for help [*Id.* at 61, 63]. The victim and her attacker continued to struggle, with the attacker continually beating the victim and telling her to shut up, and the attacker ultimately put his fingers inside of the victim twice [*Id.* at 61, 63]. At one point during the struggle, one of the dirty socks came off one of the attacker's hands [*Id.* at 61]. The victim did not definitively recall which of her attacker's hands had lost a sock, though she thought the sock came off the attacker's left hand, which had a tattoo, and the victim did not see a tattoo on the hand of her attacker [*Id.* at 61–62, 69]. The victim did not tell her attacker that she recognized him because she thought he would kill her, and she was ultimately able to escape the apartment as her attacker stood up to take off his pants [*Id.* at 62].

The victim also testified that her Sony Playstation had been plugged in on a television stand when she went to bed on the night of the attack, but was unplugged and on the floor in a picture taken after the attack [*Id.* at 64]. The victim further testified that she was not sure whether a screen from the front of her house that was missing in a picture taken by a detective after the attack had been missing prior to the attack, but testified that her front and back door were deadbolted prior to the attack [*Id.* at 63–64].

The victim considered Petitioner an acquaintance and had "a short conversation" with him two days prior to the attack at a gas station [*Id.* at 65]. Prior to that short conversation, however, the victim had not spoken to Petitioner in two to three years and had spoken to Petitioner a total of seven or eight times in her life [*Id.* at 73–74]. The victim testified that she had "no doubt" that Petitioner was her attacker [*Id.* at 63, 66].

The victim further stated that her attacker used the terms and phrases "b*tch," "shut up, b*tch," and "I'll kill you" several times and "where's the money" once during the attack, but

acknowledged that she and her attacker had not had a dialogue or conversation the night of the attack [*Id.* at 69–70]. Detectives did not ask the victim whether there was anything distinctive about the attacker and/or Petitioner's voice, but rather only asked if she was sure that the attacker's voice was Petitioner's [*Id.* at 25, 74–75]. Other evidence at trial showed that Petitioner lived approximately one-hundred to one-hundred and fifty yards away from the victim [*Id.* at 14].

The victim first told a police detective that she was certain that she recognized her attacker as Petitioner at the hospital on the night of the attack [*Id.* at 11–13, 31].

### 3. State Court Opinion

The TCCA stated as follows regarding Petitioner's claims that the evidence was insufficient to establish his identity as the attacker and/or that he intended to commit theft:

> The appellant claims that the evidence is insufficient to support the convictions and that the trial court should have granted his motion for judgment of acquittal because the State failed to prove beyond a reasonable doubt that he committed the crimes. Specifically, he argues that the State failed to prove that he was the victim's attacker because DNA analysis did not show he committed the crimes, no fingerprint evidence was obtained to link him to the crimes, and the State failed to provide evidence to corroborate the victim's claim that she recognized her attacker's voice as that of the appellant. Regarding the aggravated burglary conviction, the appellant also claims that the State failed to prove that the intruder intended to commit theft. The State contends that the evidence is sufficient. We agree with the State.

> When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. *Id.* Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Hall,* 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice,* 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *State v. Marable,* 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)). []Moreover, "[t]he standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." *State v. Thompson,* 88 S.W.3d 611, 614–15 (Tenn. Crim. App. 2000).

Regarding the identity of the victim's attacker, the victim testified that she spoke with the appellant two days before the crimes, that she had spoken with him seven or eight times previously, and that she immediately recognized his voice during the attack. The victim identified the appellant to the first officer on the scene and Detective Ross at the hospital. Detective Ross testified that the victim was "very adamant" that the appellant had committed the crimes. Defense counsel cross-examined the State's witnesses about the victim's identification of the appellant, and the jury obviously accredited their testimony. Although no forensic evidence directly

linked the appellant to the crimes, Agent Shipman's DNA analysis could not exclude him as the perpetrator. Therefore, taken in the light most favorable to the State, the evidence is sufficient to support the convictions.

Regarding the appellant's claim that the State failed to show the intruder intended to commit theft, aggravated burglary is defined as burglary of a habitation. Tenn. Code Ann. § 39–14–403(a). Relevant to this case, burglary occurs when, without the effective consent of the property owner, the person enters the habitation with intent to commit theft. Tenn. Code Ann. § 39–14–402(a)(1).

Turning to the instant case, the victim testified that she fell asleep but woke, heard a "distinct sound," and realized someone was in her apartment. The victim called out "hello," and a man, who had been downstairs, ran upstairs and pointed a gun at her. After the attack, the victim noticed that her PlayStation had been moved from the television stand to the floor and was unplugged. Prior to the attack, the PlayStation had been on the stand and plugged in. Taken in the light most favorable to the State, the jury could have reasonably concluded that the appellant entered the victim's apartment, unplugged the PlayStation and removed it from the television stand with the intent of taking it, ran upstairs and attacked the victim when she called out, and fled the apartment without taking the PlayStation when the victim escaped from him. Therefore, the evidence is sufficient to support the appellant's conviction for aggravated burglary.

*State v. Parks*, No. E2012-02621-CCA-R3-CD, 2013 WL 5314600, at *1–4 (Tenn. Crim. App. Sept. 7, 2012).

### 4. Analysis

First, despite closely examining the DNA expert witness's testimony at Petitioner's trial, the Court is unable to answer the rhetorical question that the prosecutor posed to the jury in his closing argument in which he effectively asked: What are the odds that Petitioner's DNA sample would have markers in common with the evidentiary DNA samples from the gun and the sock and that Petitioner would be the person that the victim identified as her attacker? [Doc. 8-4 at 29]. The

Court cannot answer this question because none of the evidence introduced at trial established the probability that Petitioner was a contributor to the evidentiary DNA samples based on the shared DNA markers.  The Court notes, however, that the DNA expert testified that (1) it was "most likely" that a DNA sample taken from one of her colleagues also would have had some markers in common with the DNA samples from the gun and sock and (2) if a DNA sample from the victim had been tested, she may have been able to rule out Petitioner as a contributor to the evidentiary DNA samples.  These statements suggest that it was fairly likely that anyone's DNA sample, including Petitioner's, would have shared DNA markers with the evidentiary DNA samples and that the shared DNA markers therefore had very little significance.

Further, the Court is uncertain about the reliability of the victim's voice identification of Petitioner as her attacker.  While the victim identified Petitioner as her attacker fairly quickly and never wavered, she did not set forth any basis for this identification other than a short conversation she had with Petitioner two days prior to the attack at a gas station.  Specifically, while the evidence showed that Petitioner had "a short conversation" with the victim two days before the attack, Petitioner and the victim had not spoken in two or three years prior to that conversation and had had a total of seven or eight conversations.  Moreover, the evidence at trial established that the victim did not identify any distinctive characteristics of Petitioner's voice or the attacker's voice that supported her identification of Petitioner as her attacker.  Further, the attacker wore a mask that covered his mouth and used a very limited number of words during the attack.

As set forth above, however, the Court is bound by *Jackson v. Virginia* to draw all inferences and resolve all credibility issues in favor of the prosecution and cannot substitute its judgment for that of the jury.  Moreover, the testimony of a single uncorroborated witness for the prosecution is sufficient to support a rape conviction.  *United States v. Howard*, 218 F.3d 556, 565

(6th Cir. 2000) (holding that "the testimony of a rape victim alone is sufficient to support a defendant's conviction"). Accordingly, drawing all inferences and resolving all credibility issues in favor of the prosecution, the evidence was sufficient to establish the essential elements of the aggravated rape and aggravated burglary crimes of which Petitioner was convicted, including that Petitioner attacked and raped the victim, after entering her habitation without her consent, with the intent to commit theft, while armed "with a weapon or an[] article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon." Tenn. Code Ann. §§ 39-13-502, 503(a), and 501(7) and §§ 39-14-402(a)(1) and 403(a).

Thus, the TCCA's determination that the evidence was sufficient to support Petitioner's convictions was not an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented and Petitioner is not entitled to § 2254 relief for this claim.

### C. Sentence

Petitioner also claims that the state court erred with regard to his sentence by imposing an enhancement factor, not considering his mental health issues as a mitigating factor, and not making separate findings as to which enhancement factors applied to each conviction [Doc. 2 at 6; Doc. 5 at 1–2]. As these claims arise out of allegations of error in the application of state law, however, they are not cognizable under § 2254. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (holding that "it is not the province of a federal habeas court to reexamine state-court determinations on state-court questions"). Thus, the Court will not address the merits of this claim.

### D. Ineffective Assistance of Counsel

As set forth above, Petitioner also asserts a number of claims of ineffective assistance of counsel. The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the

accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. As with all claims for habeas relief, Petitioner has the burden of proving ineffective assistance of counsel. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting an ineffective assistance of counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The Supreme Court has emphasized that a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet his burden, and if either prong is not satisfied, the claim must be rejected. *Strickland*, 466 U.S. at 69. Moreover, a habeas petitioner alleging ineffective assistance of counsel bears a heavy burden, given the "doubly deferential" review of a such a claim under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Further, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

### 1. Mental Evaluation

First, Petitioner asserts that his trial counsel was ineffective for not requesting a mental examination of him based on his history of mental illness and a 2010 examination by a doctor [Doc. 8-8 at 90–91].

In affirming the denial of Petitioner's post-conviction petition, the TCCA set forth a detailed analysis of this claim and specifically noted that the post-conviction court rejected both Petitioner's testimony that he had asked trial counsel for a mental health evaluation and Petitioner's mother's testimony that she had informed trial counsel of Petitioner's mental health issues as lacking credibility. *Parks v. State*, No. E2014-02359-CCA-R3-PC, 2015 WL 9013165 at *5 (Tenn. Crim. App. Dec. 15, 2015). The TCCA further noted that while "[t]rial counsel was aware that Petitioner was somewhat 'slow' and had a diagnosis that entitled him to disability benefits . . . , [he] was not aware that Petitioner had any serious mental diseases or defects" such that Petitioner would not be competent to stand trial or assist in his defense, which Petitioner did.

*Id.* The TCCA therefore held that trial counsel was entitled to rely on his own experiences with Petitioner and exercise his discretion in deciding not to have Petitioner undergo a mental health evaluation. *Id.* Most notably, the TCCA noted that Petitioner had failed to establish that he had suffered any prejudice due to counsel's failure to have him undergo a mental health evaluation. *Id.*

While it is apparent that Petitioner had some mental health issues during the time period underlying his convictions, the TCCA correctly pointed out that nothing in the record establishes how a mental health evaluation would have benefitted Petitioner, and it is not apparent from the 2010 mental evaluation which Petitioner cites to support this argument [Doc. 8-8 at 90–91] how any further mental health evaluation could have benefited his defense. As such, Petitioner did not meet his burden to establish that counsel's failure to request a mental health evaluation prejudiced him, the TCCA's finding that Petitioner was not entitled to relief on this claim was not an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented, and Petitioner is not entitled to § 2254 relief for this claim.

### 2. Alibi Witness

Petitioner also alleges that trial counsel was ineffective with regard to his girlfriend, who was prepared to testify as an alibi witness in Petitioner's trial. Petitioner specifically alleges that trial counsel failed to investigate the witness's prior record and the fact that the charges this witness had filed against him were dismissed [Doc. 2 at 5; Doc. 5 at 3]. In analyzing this claim, the TCCA noted that trial counsel did not call this individual as an alibi witness because she had previously sworn out a private prosecution warrant against Petitioner for burglary, her alibi would have placed Petitioner very close to the crime scene, and trial counsel was concerned that the witness was upset about an arrest warrant with which she was served at the trial. *Id.* at *6.

The TCCA correctly found that the record establishes that calling Petitioner's girlfriend to the stand as an alibi witness would have opened the door to evidence that may have been more damaging than helpful to Petitioner's defense, including the fact that the witness had claimed that Petitioner had broken into her apartment and assaulted her and her friend in July 2010, which was three months before the attack at issue in the trial, and had never approached police to provide Petitioner with an alibi [Doc. 8-3 at 101–2]. As such, counsel's decision not to call this witness was reasonable. *Carter v. Mitchell,* 443 F.3d 517, 532 (6th Cir. 2006) (finding that where a witness's testimony is likely to do more harm than good, counsel is not deficient for not calling that witness). Accordingly, the TCCA's finding that Petitioner was not entitled to relief on this claim was not an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented and Petitioner is not entitled to § 2254 relief for this claim.

### 3. Alibi Questioning

Petitioner also asserts that counsel was ineffective for not objecting to or requesting a mistrial based upon a question from the prosecutor to a detective asking if anyone had given the detective an alibi for Petitioner for the crime [Doc. 5 at 2; Doc. 14 at 2]. The TCCA held as follows regarding this claim:

> Trial counsel admitted that he did not object when the prosecutor asked the investigating officer, "[U]p to today as you sit on that witness stand, has anyone come to you to give Mr. Parks an alibi to this crime?" Assuming that this was an improper question which shifted the burden of proof to the defense, we do not think that trial counsel's failure to object or request a mistrial was ineffective assistance. Trial counsel was well pleased with progression of the trial up to that point, and he believed that the question warranted, at most, a curative instruction, which trial counsel believed only would have emphasized the error. From the record, it does not appear that a mistrial was warranted under the circumstances. Thus, trial counsel's decision not to request a mistrial was a tactical decision which we do not find deficient.

*Parks v. State*, No. E2014-02359-CCA-R3-PC, 2015 WL 9013165 at *6 (Tenn. Crim. App. Dec. 15, 2015).

As the TCCA properly noted, in response to questions about this exchange at the hearing on Petitioner's post-conviction petition, counsel conceded that he should have objected to this question, but reiterated that his defense strategy was to argue reasonable guilt and stated that he did not believe that this statement was sufficient grounds for a mistrial or was so prejudicial to Petitioner that it would affect the outcome of the case [Doc. 8-6 at 94–95]. Counsel further believed that if he had requested a mistrial based on this exchange, the judge may instead have given the jury a curative instruction which could have reinforced the testimony [*Id.*].

First, counsel's explanation that he did not seek a mistrial based on this question because he did not think the question was sufficient grounds for a mistrial and he feared that the judge would instead issue the jury a curative instruction that would only draw more attention to the question is reasonable and sound trial strategy. Accordingly, the TCCA's finding that Petitioner was not entitled to relief on this claim was not an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented and Petitioner is not entitled to § 2254 relief for this claim.

The Court notes, however, that in his § 2254 filings setting forth this claim, Petitioner argues that the prosecutor's question regarding whether anyone had provided an alibi for Petitioner to the detective unfairly used Petitioner's Fifth Amendment right to remain silent against him [Doc. 14 at 2–3]. While Petitioner's post-conviction counsel raised the claim that trial counsel was ineffective for not objecting to this question in his appeal of the denial of his petition for post-conviction relief [Doc. 8-12 at 25–27], post-conviction counsel did not assert that counsel was ineffective for not objecting to this question because it unfairly used Petitioner's Fifth Amendment

silence against him in his appeals to the TCCA [*Id.*].  As such, it does not appear that Petitioner "fairly presented" this claim to the TCCA such that it was properly exhausted and Petitioner therefore procedurally defaulted this claim.[2]

Even if this claim were properly before this Court, however, Petitioner is not entitled to relief under § 2254 based upon counsel's failure to object to the prosecutor's question because Petitioner has not established that he suffered any prejudice as a result of his counsel's failure to object.  A defendant's decision to remain silent after he has been advised of his Fifth Amendment right to do so cannot be used as evidence of his guilt.  *Griffin v. California*, 380 U.S. 609, 615 (1965).  Further, the Sixth Circuit has held that a suspect being questioned in the course of an investigation of a crime may assert his right to remain silent under the Fifth Amendment.  *Combs v. Coyle*, 205 F.3d 269, 279, 283 (6th Cir. 2000).  Thus, a prosecutor may not present evidence of or make statements that imply a defendant's guilt based upon his silence, and defense counsel's failure to object thereto may amount to ineffective assistance of counsel.  *Girts v. Yanai*, 501 F.3d 743, 757 (6th Cir. 2007).  Moreover, where the defendant's counsel fails to object to such misconduct in a manner that is so erroneous that it amounts to ineffective assistance of counsel

---

[2] Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See Picard v. Connor*, 404 U.S. 270, 275–77 (1971) *cited in Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  "Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts."  *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

To fairly present a claim, it is not enough that all the facts necessary to support a federal claim were before the state court or that a somewhat similar state law claim was made.  *See Anderson*, 459 U.S. at 6; *Harris v. Rees*, 794 F.2d 1168, 1174 (6th Cir. 1986); *see also Duncan*, 513 U.S. at 366 (mere similarity of claims is insufficient to exhaust).  "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."  *Duncan*, 513 U.S. at 365–66.

that prejudiced the defendant, that failure to object may establish cause and prejudice to excuse a habeas petitioner's procedural default of any such claim. *Id.* at 757–58.

In this case, however, even if the Court assumes without finding that the prosecutor's initial question asking if anyone had provided the detective with an alibi for Petitioner for the crime was an impermissible use of Petitioner's Fifth Amendment silence and that counsel was deficient for not objecting thereto, it is apparent that counsel's failure to object did not prejudice Petitioner, as evidence later introduced at trial demonstrated that Petitioner never provided the detective with an alibi [Doc. 8-3 at 19–30[3]]. Petitioner has never asserted that the introduction of this later evidence that he did not provide the detective with an alibi was improper in any way. Thus, even if the Court assumes that the prosecutor's initial question was improper and that Petitioner's counsel was ineffective for not objecting thereto, Petitioner has not established that he was prejudiced by this omission and Petitioner is not entitled to relief under § 2254 for this claim.

### 4. DNA Evidence

Petitioner also asserts that counsel should have filed a motion to suppress the DNA evidence because the results were not reliable or trustworthy and did not assist the trier of fact [Doc. 2 at 5; Doc. 4 at 2]. The TCCA stated as follows regarding this claim:

---

[3] Notably, during the bench conference regarding the prosecutor's inquiry about whether defense counsel's introduction of Petitioner's *Miranda* waiver opened the door for the prosecutor to point out that Petitioner had not provided an alibi to the detective, Petitioner's counsel noted that he thought that the prosecutor had already asked that question and the prosecutor denied that he had done so and stated that if he had, it would have been objectionable and grounds for a mistrial [Doc. 8-3 at 19–20]. Thus, it is apparent that the prosecutor did not intend to comment on Petitioner's failure to provide an alibi in his initial question and did not believe that he had done so. It is further apparent from this exchange and the totality of defense counsel's testimony on this issue at the post-conviction hearing that defense counsel was aware of the potential implications of the prosecutor's initial question and chose not to bring additional attention to the issue, but rather to focus on his defense strategy of emphasizing that the jury should have reasonable doubt about Petitioner's guilt, which was a reasonable strategy.

Petitioner argues that trial counsel should have filed a motion to suppress the DNA test results. However, Petitioner has failed to show that the motion would have succeeded had trial counsel filed such a motion. Trial counsel spent considerable effort discussing the test results with the TBI analyst and evaluating both the value of the evidence and the possible need for independent testing. Trial counsel did not believe that the motion would have been granted because the results were relevant and somewhat probative. Trial counsel chose instead to focus on arguing the weight of the evidence to the jury. At the hearing, trial counsel also noted the possibility that the suppression hearing could have resulted in a benefit to the State by giving it an opportunity to become better informed about the nature of the TBI analyst's testimony before trial. Given the facts of this case, we do not think that trial counsel's decision not to file a motion to suppress this evidence was deficient.

*Parks v. State*, No. E2014-02359-CCA-R3-PC, 2015 WL 9013165 at *6 (Tenn. Crim. App. Dec. 15, 2015).

The record establishes that while counsel acknowledged that he should have filed a motion to suppress the DNA evidence based on Petitioner's concerns about that evidence [Doc. 8-6 at 25], he ultimately believed that the trial court would have denied such a motion because the fact that the DNA evidence did not exclude Petitioner had some relevance and he therefore made the strategic decision to argue the weight of the evidence instead [*Id.* at 22–37].

As set forth above, the Court has closely reviewed the DNA evidence presented at trial and cannot find any evidence to establish the probability that Petitioner was a contributor to the evidentiary DNA samples based on the shared DNA markers. Moreover, the substance of the DNA expert's testimony at trial highly suggests that it was fairly likely that anyone's DNA sample, including Petitioner's, would have shared DNA markers with the evidentiary DNA samples and that the shared DNA markers therefore had very little significance.

Thus, it appears that the DNA evidence as introduced at trial was only slightly probative, but highly prejudicial.[4]  Given the doubly deferential standard of review, however, the Court cannot find that the TCCA's holding that counsel was not deficient for deciding not to file a motion to suppress this evidence was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented.  As the TCCA pointed out, it is unclear whether a motion to suppress the DNA evidence may have sharpened the prosecution's knowledge of the DNA evidence such that it could have strengthened the case against Petitioner.  Specifically, if counsel had filed a motion to suppress, it is possible that the prosecution would have discovered and introduced evidence that the number of DNA markers that Petitioner's DNA shared with the evidentiary samples made it probable that Petitioner was a contributor to those samples such that the DNA evidence would have been stronger than it was as introduced at trial.  Accordingly, Petitioner is not entitled to § 2254 relief for this claim.

### 5.  Cross-Examination

Petitioner also claims that counsel was ineffective for not vigorously cross-examining the victim at trial regarding inconsistent statements [Doc. 2 at 5; Doc. 5 at 2 and 3; Doc. 10 at 2].  The TCCA held as follows regarding this claim:

> Petitioner claims that trial counsel provided inadequate cross-examination of the victim. However, trial counsel thoroughly explained that the tenor and substance of his cross-examination was intentionally calculated to build rapport with the victim and to avoid alienating the jury. We conclude that these decisions were wholly within the realm of reasonable trial tactics and that trial counsel was not deficient in this regard. Petitioner has not identified any significant shortcomings in trial counsel's cross-examination of the victim such that Petitioner's case was prejudiced by the omission of

---

[4]  The Court also notes that the prejudicial effect of the DNA evidence was likely compounded by both counsel's statement in his closing argument that he "did not have particular knowledge" of the DNA in the case and his failure to fully emphasize the weakness of the DNA evidence in his closing argument [State Court Record Attachment 4 at 150–51].

> additional questioning. Petitioner is not entitled to relief on this
> basis.

*Parks v. State*, No. E2014-02359-CCA-R3-PC, 2015 WL 9013165 at *6 (Tenn. Crim. App. Dec.

15, 2015).

The Court agrees with Petitioner's counsel that the victim's statement that Petitioner asserts

counsel should have used to vigorously cross-examine the victim was not inconsistent with her

trial testimony, but rather was a statement to medical personnel in which she omitted certain

details, including Petitioner's name and the detail that her attacker wore socks on his hands [Doc.

8-8 at 99]. Specifically, although the statement reflects that the victim said that her attacker had

not raped her, the statement also includes the victim's assertion that her attacker had "stuck his

fingers inside of [her] (vagina)" [*Id.*], and digital penetration qualifies as rape under Tennessee

law. Tenn. Code Ann. §§ 39-13-503(a) and 501(7).

Further, as counsel testified, there were a number of explanations for the victim not

identifying Petitioner by name and not setting forth every detail of the attack in this statement.

Moreover, the evidence established that the victim identified Petitioner as her attacker to at least

one police detective while she was at the hospital the night of the attack [Doc. 8-3 at 12–13].

Thus, it is apparent that counsel's decision not to cross-examine the witness with this

statement was not deficient and Petitioner did not suffer any prejudice from this decision.

Accordingly, the TCCA's holding that Petitioner was not entitled to relief on this claim was not

an unreasonable application of federal law or an unreasonable determination of the facts in light

of the evidence presented and Petitioner is not entitled to relief under § 2254 on this claim.

### 6. Physical Evidence

Petitioner also asserts that counsel was ineffective for not examining the physical evidence,

specifically a sock, despite inconsistent descriptions of that evidence [Doc. 2 at 5; Doc. 5 at 2].

The TCCA examined this claim and found that Petitioner had not established that counsel was deficient for not examining the sock despite differing color descriptions thereof and further that Petitioner "certainly" had not established that any prejudice resulted therefrom. *Parks v. State*, No. E2014-02359-CCA-R3-PC, 2015 WL 9013165 at *6 (Tenn. Crim. App. Dec. 15, 2015). As Petitioner has not asserted or established any prejudice resulted from counsel's failure to physically examine the evidence and no such prejudice is apparent from the record, the TCCA's holding that Petitioner was not entitled to relief on this claim was not an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented and Petitioner is not entitled to relief under § 2254 for this claim.

## IV.    CONCLUSION

For the reasons set forth above, Petitioner's requests for § 2254 relief will be **DENIED** and this action will be **DISMISSED**.

## V.    CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the

petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists would not debate the Court's finding that Petitioner procedurally defaulted the claims that he did not properly raise in his appeals to the TCCA. Further, reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right with regarding to his remaining claims addressed on the merits above such that they would be adequate to deserve further review. Accordingly, a **COA SHALL NOT ISSUE.**

**AN APPROPRIATE ORDER WILL ENTER.**

ENTER:


_____
                      s/J. RONNIE GREER
                      UNITED STATES DISTRICT JUDGE